```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND


In re: COMMERCE, LLC           *
      (Debtor)                 *    Bankr. Case No. 13-12598-JFS
                               *         (Chapter 7)
*  *  *  *  *  *  *  *  *  *  *  *
                               *
ZVI GUTTMAN, TRUSTEE           *
                               *    Bankr. Adv. No. 15-69-JFS
v.                             *
                               *    Civil No. WMN-15-1294
CHEMENCE, INC. et al.          *
                               *
      *  *  *  *  *  *  *  *  *  *  *  *
```

**MEMORANDUM**

Before the Court is a Motion for Summary Judgment filed by Defendants Chemence, Inc. (CI) and Chemence Medical Products, Inc. (Chemence Medical). ECF No 26. The motion is fully briefed. Upon review of the filings and the applicable case law, the Court determines that no hearing is necessary, Local Rule 105.6, and that the motion should be granted.

## I. FACTUAL[1] AND PROCEDURAL BACKGROUND

This action was initially filed as an adversary action in the bankruptcy case of Debtor Commerce, LLC. (Commerce). Plaintiff Zvi Guttman is the Debtor's Chapter 7 Trustee. Commerce was once a major wholesale distributor of lawn, garden, outdoor living, and holiday products. Malcolm Cork was the

---

[1] The underlying facts giving rise to this suit are generally undisputed, except where noted.

president of Commerce from 2004 until August 2012, when his employment was terminated.

Cork, while still the president of Commerce, formed a new company, Medical Solutions International, Inc. (Medical Solutions), of which he was the sole owner.  On or about January 8, 2011, Medical Solutions entered into a Sales, Marketing and Distribution Agreement (Sales Agreement) and a License Agreement with Chemence Medical, an enterprise which is engaged in the manufacture of medical adhesives.  The Sales Agreement established Medical Solutions as a distributor for a particular medical adhesive manufactured by Chemence Medical, SURE+CLOSE®, and the License Agreement permitted Medical Solutions to use the trademark for that product in its marketing efforts.  Under the terms of the License Agreement, Medical Solutions was to pay Chemence Medical the sum of $750,000.00 in four installments: one for $100,000.00; one for $275,000.00; and two for $187,500.00.  On or about July 15, 2011, Cork caused Commerce to wire $187,500.00 from Commerce's account to Chemence Medical and represented to Chemence Medical that this was Medical Solutions' third required payment under the License Agreement.  Cork represented to Chemence Medical that he had the authority to make this wire transfer.

In August of 2012, Commerce filed a suit in this Court against Medical Solutions relating to a $150,000.00 Commerce

check that Cork allegedly had issued to Medical Solutions. Commerce LLC v. Med. Solutions Int'l, Inc. Civ. No. WMN-12-2393. Also in August 2012, Commerce filed a separate suit in this Court against Cork alleging that he had breached his agreement to repay a $450,000.00 shareholder loan made to him by Commerce. Commerce LLC v. Cork, Civ. No. RDB-12-2513.  These cases were consolidated.  On January 18, 2013, Commerce and Commerce's chairman of the board and president, Richard Lessans, entered into a Settlement Agreement with Cork, Cork's wife, and Medical Solutions which purported to resolve any and all claims between the parties.  ECF No. 26, Ex. 8.  That Settlement Agreement provided that "[t]he parties wish to enter into a complete and final resolution of all disputes, business dealings and other matters between them and related Parties, and have reached a full, complete, voluntary and amicable settlement of any and all disputes, claims and causes of action between them." Id. at 4. The agreement specifically identified as one of the claims being settled the "$187,500, paid via wire transfer on or about July 15, 2011, and noted that "this claim is not the subject of a currently pending lawsuit, but has been asserted in correspondence between legal counsel." Id. at 2.

    Pursuant to the Settlement Agreement, Cork made an initial payment of over one half a million dollars.  On February 19, 2013, the parties submitted a stipulation of dismissal, with

3

prejudice, which the Court granted on February 21, 2013. Cork, however, has defaulted on subsequent payments due under the Settlement Agreement. On March 20, 2014, Cork was indicted in this Court on wire fraud charges related to the July 15, 2011, wire transfer of funds from Commerce to Chemence Medical. United States v. Cork, Crim. No. CB-14-134.[2]

On March 26, 2014, Cork and Medical Solutions entered into an Asset Purchase Agreement with Chemence Medical. Under the terms of that agreement, Chemence Medical purchased back Medical Solution's SURE+CLOSE® business and related assets, including the license to use the SURE+CLOSE® trademark, for the sum of $1,060,000.00. The agreement also included an indemnification provision whereby Medical Solutions and Cork agreed to indemnify Chemence Medical for any losses, damages, or liabilities related to Medical Solutions' business operations.

On February 13, 2015, Plaintiff filed the instant adversary action seeking to recover from Chemence Medical the $187,500.00 that was wired to it by Cork. The Complaint includes counts for "Unjust Enrichment" (Count I), "Constructive Trust" (Count II), "Declaratory Relief" (Count III), and "Turnover" (Count IV) and names the following entities as Defendants: Chemence Medical;

---

[2] Cork subsequently pled guilty and was sentenced to a 15 month term of imprisonment.

CI; Chemence Medical, Inc.; and Chemence, LLC.[3]  Chemence Medical and CI have answered the Complaint, the other two entities have not.  On July 1, 2015, this Court granted a motion filed by Chemence Medical and CI, and opposed by Plaintiff, to withdraw the reference over this action to the bankruptcy court.  ECF No. 5.  On July 8, 2015, Chemence Medical filed a third party complaint against Cork and Medical Solutions for indemnification.  On January 7, 2016, the Clerk of the Court entered default against the third party defendants for want of answer.

    Chemence Medical and CI have now moved for summary judgment as to all claims brought against them.  Defendant CI asserts that it had no connection, whatsoever, with the wire transfer and has never conducted business with Commerce, Medical Solutions, or Cork.  Chemence Medical argues that Commerce fully and finally settled all claims related to the wire transfer when it settled the previous suits against Cork and Medical Solutions.  In the alternative, Chemence Medical argues that it was not unjustly enriched by the wire transfer because it provided equivalent value for the payment in the form of the SURE+CLOSE® trademark license.  As for the remaining three counts, this Court has already concluded that these counts are

---

[3] Defendant explains that the wire transfer went to a bank account titled "Chemence LLC," and it was unclear which entity actually received the funds.

5

more in the nature of remedies, not causes of action, and each are dependent on a finding of liability under the unjust enrichment claim.  ECF No. 4 at 7.

**II. LEGAL STANDARD**

A motion for summary judgment will be granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party."  Liberty Lobby, 477 U.S. at 250; JKC Holding Co. LLC v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001). The moving party bears the burden of showing that there is no genuine dispute as to any material fact.  However, no genuine dispute of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. Celotex, 477 U.S. at 322–23.  Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an "affidavit or other evidentiary showing" demonstrating that there is a genuine issue for trial.  See Ross v. Early, 899 F. Supp. 2d 415, 420 (D. Md. 2012).  "A mere scintilla of proof ...

will not suffice to prevent summary judgment." Peters v. Jenney, 327 F.3d 307, 314 (4th Cir. 2003). A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." Shin v. Shalala, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citation omitted). Indeed, this court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. See Drewitt v. Pratt, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987)).

## III. DISCUSSION

In arguing that the January 18, 2013, Settlement Agreement also released the claim against it, Chemence Medical relies on a decision of the Maryland Court of Special Appeals, Chicago Title Insurance Company v. Lumbermen's Mutual Casualty Company, 707 A.2d 913 (Md. Ct. Spec. App. 1998). In Chicago Title, a title insurance company sued one of its agents and the principal of that agent alleging that the agent had misappropriated funds from its escrow account. The insurance company also sued the entity that had provided the agent's surety bond. Previously, the agent and its principal had entered into an agreement with that surety to indemnify it for any losses on the bond. While the litigation was pending, the plaintiff title insurance company reached a mediated settlement with the agent and its principal. Those parties then executed a release, and the

7

claims against the agent and its principal were dismissed with prejudice.

When the plaintiff attempted to continue to press its claim against the surety, the surety moved for summary judgment, arguing that the release of the claims against the agent and its principal also discharged the surety claim against it. The trial court granted that motion, and the plaintiff appealed. In affirming that decision, the Maryland Court of Special Appeals acknowledged that it was undisputed that, in the settlement agreement, the plaintiff did not intend to release the surety. Id. at 918. Nevertheless, the court noted that, under longstanding Maryland case law, "in order to pursue a surety, a release must demonstrate not only that the parties did not intend to release the surety, but that the creditor expressly reserved its right to pursue the surety." Id. at 920. Because the settlement did not contain such an expressed reservation of rights, the claim against the surety was discharged. The court reasoned that, without that expressed reservation of rights,

> it would seem unfair to allow [the plaintiff] to pursue [the surety], which, in turn, would be able to pursue the [the agent and its principal] for indemnity, even though they had been fully released by [the plaintiff]. Although [the plaintiff] argues that a construction of the Release resulting in a finding of discharge of the surety is bad policy, because it would discourage settlements, we believe just the opposite. In our view, such a result would encourage informed settlements and would prevent creditors from sandbagging unsophisticated debtors.

8

Id. at 922-23.

This Court finds that the same principle applies here. The Settlement Agreement stated that it was "intended to be a general release of all rights, obligations and liabilities between the parties" and included "all claims that were or could have been asserted in the [Earlier] Actions," specifically mentioning the July 15, 2011, wire transfer. ECF No. 26, Ex. 8. This settlement between Cork and Medical Solutions and Commerce would be rendered meaningless if Plaintiff is permitted to assert a claim based on the same factual predicate against Chemence Medical when Chemence Medical certainly would, as it did, file a third party claim against Cork and Medical Solutions to indemnify it for any judgment obtained.

Plaintiff contends that the teaching of Chicago Title is limited to cases involving surety liability. ECF No. 31-1 at 8-9. To the contrary, the Second Circuit Court of Appeals, applying Maryland law, noted that, while Chicago Title was specifically concerned with reservation of rights against a surety it was simply extending to sureties a general principle previously applicable to judgment debtors. Koehler v. Bank of Bermuda, Ltd., 544 F.3d 78, 84 (2nd Cir. 2008). In Koehler, there was a clearly and definitively expressed reservation of rights in the settlement agreement between a judgment creditor and a judgment debtor. Based upon that reservation of rights,
9

the court permitted a judgment creditor to bring an action against a garnishee.  Id.  Before reaching that result, however, the court agreed with the trial court's conclusion that "'ordinarily, a settlement between judgement creditor and judgment debtor eliminates the right of the judgment creditor to pursue claims against a judgment debtor's garnishee . . . because the settlement removes the underlying debt upon which the judgment creditor's claim against the garnishee is based.'" Id. (quoting Koehler v. The Bank of Bermuda Ltd., Civ. No. M18-302, 2005 WL 551115, at *3 (S.D.N.Y. Mar. 9, 2005)).

Here, Commerce was certainly aware where the $187,500.00 was wired and could have at least attempted to reserve its rights against Chemence Medical when it entered into the Settlement Agreement.  It did not.  Accordingly, the Court finds that Plaintiff is not entitled to a second bite of the apple by now going after Chemence Medical.[4]

The Court also finds that the unjust enrichment claim against Chemence Medical would fail on its merits even if not

---

[4] Plaintiff complains that after making the initial one half million dollar payment under the Settlement Agreement, Cork defaulted on his remaining obligations under that agreement. The claims against Cork and Medical Solutions were dismissed, with prejudice in the prior litigation.  By extension, under the principle discussed in Chicago Title, the claims against Chemence Medical were also resolved, with prejudice.  A default on the terms of the Settlement Agreement might give rise to breach of contract action against Cork and Medical Solutions, but does not resurrect claims that were dismissed with prejudice.

barred by the Settlement Agreement.  To prevail on a claim of unjust enrichment, a plaintiff must establish these three elements:

> 1. A benefit conferred upon the defendant by the plaintiff;
>
> 2. An appreciation or knowledge by the defendant of the benefit; and
>
> 3. The acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.

<u>Hill v. Cross Country Settlements, LLC</u>, 936 A.2d 343 (Md. 2007). Chemence Medical challenges Plaintiff's ability to establish the third element, noting that, because Chemence Medical provided good and valuable consideration for the payment at-issue, <u>i.e.</u>, the license for SURE+CLOSE®, there is nothing inequitable in Chemence Medical retaining that benefit.

Plaintiff makes a feeble argument that the value of the license for the use of the SURE+CLOSE® trademark somehow was not equal to the price Chemence Medical paid, noting that when Chemence Medical bought back the rights to sell SURE+CLOSE® products, only $15,000.00 was allocated for the purchase of intellectual property under the Asset Purchase Agreement.  That observation ignores the fact that Chemence Medical paid $910,000.00 for Customer Contract Rights to sell those products and those rights would have no value without the right to use

the SURE+CLOSE® trademark. Notwithstanding Plaintiff's suggestion to the contrary, the Court finds that there is no evidence from which it can be inferred that the price given and received for the License Agreement was not a fair and equitable price, considering it was the result of an arms-length negotiation between sophisticated business entities. See Simard v. Burson, 14 A.3d 6, 16 (Md. Ct. Spec. App. 2011) (concluding that an "arm's length transaction," i.e., "a transaction negotiated by unrelated parties, each acting in his or her own self interest" is "the basis for a fair market value determination").

## IV. CONCLUSION

For these reasons, the motion for summary judgment will be granted. A separate order will issue.

_____/s/_____
William M. Nickerson
Senior United States District Judge

DATED: January 11, 2017